PEATROSS, J.
 

 | iDefendant, Gregory Taylor, was charged with simple burglary and was later convicted by a jury as charged. The State then filed a habitual offender bill and the trial judge adjudicated Defendant a fourth felony offender. Defendant was sentenced to serve a term of 30 years’ imprisonment at hard labor. Defendant now appeals, urging three assignments of error. Finding, however, this appeal to be not ripe for consideration, we remand for further proceedings consistent with this opinion.
 

 PROCEDURAL HISTORY
 

 Defendant was arrested and charged with simple burglary. The trial judge appointed counsel, Mr. K. Wayne Dishman, from the Caddo Parish Indigent Defender’s office, to represent Defendant. There were several motions and some confusion prior to trial pertaining to the DNA testing of Defendant. At the preliminary examination, the State made Defendant a plea offer of an agreed 20-year sentence for a guilty plea, which offer would be rescinded if any DNA testing proved that Defendant was the offender. The trial judge required the State to file a formal motion seeking a DNA sample from Defendant and Defendant’s attorney stated on the record that he had no objection to the request for a sample.
 

 Thereafter, the State filed a formal motion requesting a court order for Defendant to submit to oral buccal swabs in order to permit forensic comparison. The court held a hearing on the motion; and, after waiving Defendant’s presence, Defen
 
 *1159
 
 dant’s attorney objected to the State’s motion for a DNA sample. The court overruled the objection, granted the State’s | arequest and ordered Defendant to submit to the test within a specified time period.
 

 No sample was ever taken; however, at a subsequent hearing where Defendant was present, the State informed the court that the district attorney’s office had not met the deadline and apologized for the delay. Once again, Defendant’s attorney objected to the DNA testing and the court rescinded its earlier order directing Defendant to submit to the testing. The record does not reveal any additional discussion of the DNA matter prior to trial.
 

 The matter went to trial before a jury in November 2006. At trial, the jury heard testimony from several witnesses. Neither the State nor Defendant offered any scientific evidence. The jury convicted Defendant as charged of simple burglary and the State filed a bill of information charging Defendant as a fourth felony habitual offender. Shortly thereafter, Defendant, through his appointed counsel, filed a motion for new trial, a motion for post-verdict judgment of acquittal and a motion to quash the habitual offender bill. In the motion for new trial, Defendant asserted,
 
 inter alia,
 
 that a DNA test of the evidence found at the crime scene would have exonerated Defendant.
 

 Defendant also filed a
 
 pro se
 
 motion for new trial wherein he argued that his trial counsel provided him with ineffective assistance in several respects, including the failure to have the blood evidence tested. Defendant then filed a motion to appoint new counsel wherein he asserted that he had discussed the blood evidence with his attorney during a pretrial visit at the | ¿jail and that his attorney told him that he planned to go to trial without the blood evidence, but, if Defendant lost at trial, he could raise the issue on appeal. Defendant claimed that he expressed to his trial counsel that he did not want “to go through with that type of process” and did not want to go to trial without the DNA evidence.
 

 The trial judge subsequently conducted a hearing on the post-verdict motions and denied both the motion for post-verdict judgment of acquittal and the motion for a new trial. That same day, the court heard evidence on the habitual offender matter and took that issue under advisement. Additionally, the trial judge heard Defendant’s
 
 pro se
 
 argument during which he urged the court to provide him with another attorney, stating that his current attorney “hasn’t done nothing for me.” The trial judge pointed out that Defendant had not raised any issues about his counsel prior to the trial. The trial judge then denied both of Defendant’s
 
 pro se
 
 motions for new counsel and for a new trial.
 

 At a subsequent hearing, the court took up Defendant’s motion for downward departure from the mandatory sentence under the habitual offender law. Defendant, representing himself with assistance from his appointed counsel, informed the court that he needed more time in order to secure the presence of witnesses and to prepare for the hearing. The trial judge observed that Defendant had habitually asked for more time and made numerous filings, noting that this pattern indicated that Defendant was not able to represent himself.
 

 14Puring the hearing on Defendant’s motion for downward departure, the following exchange occurred:
 

 Trial Judge: You insist upon representing yourself, and I don’t think you should do that. This case is over a year old and every time we come to court you want to file new papers. And I say, okay, we’ll continue it to the next time and address it, and then
 
 *1160
 
 you file new papers. Well, we’ve come to the end now.
 

 I said to you last time we were here be prepared to present your case. Present your case, sir, and I think this is all going to come back because I think the record is clear you don’t know how to represent yourself, your lawyer is not representing you, and nobody is doing any of this right. You say you want to file it, so do your thing.
 

 Defendant: Well, I haven’t been getting no help.
 

 Trial Judge: I understand that. I’ve said that. I know you’re not getting any help, but you still want to keep filing papers. Whoever is helping you outside of the court, you come to court and file it, you don’t know what you’re doing. As long as you file papers, I have to address it. And you filed all these papers last time and I said we’re going to have the hearing today so proceed. Do the best you can. I don’t know what else to tell you. I know that this is coming back because you don’t have competent counsel. You don’t have effective assistance of counsel. He hasn’t helped you. You don’t know what you’re doing.
 

 After further explanation from Defendant that he did not know how to proceed, the trial judge stated:
 

 Mr. Taylor, I can’t do it for you. I’m the judge. That’s why I say you don’t know what you’re doing. I can’t tell you how to do this, and all I’m trying to do is make a record for appellate purposes to show you did not have effective assistance of counsel that you don’t know what you’re doing.
 

 Thereafter, Defendant conducted a perfunctory direct examination of his mother in support of his motion for a downward departure and the tidal judge stated:
 

 [5The court is saying for the record you have not effectively ... [conducted] direct examination of this witness that’s because you don’t know how to. I’m also stating for the record that your lawyer is not helping you in the process in this witness. I’m saying this for the record because when this goes up on appeal, any court is going to send this back to say we didn’t do it right because you can’t represent yourself. You don’t know how to, you don’t have the skills, you don’t have the knowledge and whatnot, and I’m saying again your lawyer is not helping you.
 

 On January 10, 2008, the trial court signed an opinion partially granting Defendant’s motion to quash the habitual offender bill. The trial judge found defects in two of Defendant’s prior convictions which he determined disqualified them as predicates under the habitual offender law. The court’s opinion took up Defendant’s motion for a downward departure. The opinion stated in part:
 

 It became very obvious to this court that defendant was not capable of representing himself. Although he made known his desire for assistance from his appointed counsel, said appointed counsel remained mute and offered no effective assistance to defendant.
 

 [[Image here]]
 

 In this case, defendant was not afforded a meaningful opportunity to present his request for downward departure in the mandatory minimum sentence because he did not have effective assistance of counsel. Whether or not defendant is facing a mandatory twenty year sentence or mandatory life sentence, defendant deserves effective assistance of counsel to present his claim for downward departure in the mandatory mini
 
 *1161
 
 mum sentence under the Louisiana Habitual Offender law.
 

 In his conclusion, the trial judge allowed Defendant a second hearing for his motion for downward departure and stated:
 

 At this new hearing, the court trusts that the Caddo Parish Public Defender Office will provide effective assistance of counsel. This court is aware that defendant has expressed his frustrations with his assigned counsel and has requested new | (-.counsel. This court makes no determination as to whether or not counsel who appeared with defendant at the [prior] hearings should remain as counsel. However, this court urges the Cad-do Parish Public Defender Office to review the issue of what attorney should represent defendant in future hearing(s).
 

 The court issued a rule directed toward the Caddo Parish Public Defender’s Office to show cause why it should not represent Defendant on his motion for a downward departure. That office responded by stating that appointed counsel had not adopted the motion because it appeared to lack merit and that the motion to deviate from the mandatory life sentence was now moot because of the court’s ruling on the motion to quash.
 

 In the meantime, Defendant, through a new attorney from the office of the public defender, Mr. Alan Golden, filed a motion for production of DNA evidence. The motion stated that the Caddo Parish Public Defender’s Office would pay for the testing if the district attorney was unwilling to do so. At the hearing on the motion for downward departure, Mr. Golden appeared with Defendant and informed the trial judge that he believed Defendant’s motion lacked merit under the circumstances. After some consideration, the court agreed and denied the motion.
 

 The court held a sentencing hearing on June 30, 2008, where Defendant was represented by Mr. Golden. The court heard witness testimony and then took the matter under advisement. The court reconvened on July 2, 2008, for imposition of Defendant’s sentence and declined to depart downward from the minimum sentence under the habitual offender law. After considering La. C. Cr. P. art. 894.1, the trial judge sentenced Defendant to serve 30 years’ imprisonment at hard labor.
 

 17After imposing the sentence, the court stated:
 

 Mr. Taylor, I want you to know that I heard you loud and clear. I heard you when I did not think you were being properly represented. I certainly heard you through your lawyer when I think you were properly represented. And I don’t have any problems saying what I feel. I do not feel until Mr. Golden personally took an active role in your case that you were getting proper attention for your case.... And the reason I struggle in this case has lasted so long is because I did not think that you were being heard by counsel.
 

 I have no problem saying now with Mr. Golden that he did what I wish your other lawyers had done.
 

 The court then denied Defendant’s motion for DNA testing, stating that the issue would be designated for review post conviction. The trial judge further stated that he was making the ruling as if he “made it before sentencing.”
 

 Defendant filed a motion for appeal from his conviction and sentence and the trial court granted that motion. Subsequently, appointed appellate counsel filed an
 
 An-ders
 
 brief, indicating that there were no nonfrivolous issues to appeal.
 
 See Anders v. California,
 
 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967);
 
 see also State v. Benjamin,
 
 573 So.2d 528 (La.App. 4th Cir. 1990). After reviewing the record, this
 
 *1162
 
 court ordered Defendant’s counsel to brief the excessiveness of the sentence and ineffective assistance of trial counsel. Counsel then filed a brief addressing those issues, as well as the sufficiency of the evidence.
 

 DISCUSSION
 

 Defendant urges several assignments of error on appeal; however, we find that this appeal is not ripe for decision until Defendant’s claim for ineffective assistance of counsel has been resolved at the trial court. In the Incase
 
 sub judice,
 
 the trial judge stated several times for the record that he believed that Defendant had ineffective assistance of counsel at one or more points during his trial. The trial judge further stated in particular that Defendant’s trial lawyer, Mr. Dishman, had not performed in a competent and effective manner.
 

 Both the Louisiana and federal constitutions guarantee a criminal defendant’s right to the assistance of counsel,
 
 Gideon v. Wainwright,
 
 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963);
 
 State v. Brooks,
 
 452 So.2d 149 (La.1984), and our law requires that the assistance be effective. Typically, a defendant must show that his attorney’s performance was deficient and that he was prejudiced by the deficiency.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 In some cases, however, a defendant is entitled to relief absent a showing of deficiency or prejudice. Those cases are limited to instances where a defendant is denied counsel at a critical stage of the proceedings, when counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing and when the circumstances surrounding a trial prevent the defendant’s attorney from rendering effective assistance of counsel.
 
 Bell v. Cone,
 
 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002);
 
 United States v. Cronic,
 
 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
 

 Generally, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief (“PCR”) in the trial court. This is because PCR creates the opportunity for a full evidentiary hearing | ¡¡under La. C. Cr. P. art. 930. A motion for new trial is also an acceptable vehicle by which to raise such a claim.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
 

 The record reflects multiple statements from the trial judge evidencing his serious concerns about the effectiveness of Defendant’s trial counsel. These statements require inquiry into whether Defendant was constructively deprived of effective assistance of counsel at one or more of the critical stages of his proceedings. Whether there was such a deprivation impacts our review of each of Defendant’s assignments of error. We conclude, therefore, that the trial court erred in summarily denying Defendant’s motion for new trial based on ineffective assistance of counsel. In this case, the record alone is inadequate to fairly resolve this issue, and, accordingly, we remand the matter for a contradictory hearing.
 

 CONCLUSION
 

 We find that the trial judge erred in denying Defendant a contradictory hearing on his
 
 pro se
 
 motion for a new trial. Accordingly, we remand for a full evidentiary hearing on Defendant’s motion for a new
 
 *1163
 
 trial for the taking of evidence on Defendant’s ineffective assistance of counsel claim with respect to Defendant’s trial counsel, K. Wayne Dishman.
 

 REMANDED.